UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMES E. NIX,

                               Plaintiff,

                                                                                     Case # 15-CV-0328-FPG

v.

                                                                                       DECISION AND ORDER

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

                               Defendant.
_____

James E. Nix ("Nix" or "Plaintiff") brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act. ECF No. 1. This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. ECF Nos. 13 and 16. For the reasons that follow, the Commissioner's Motion is GRANTED and Plaintiff's Motion is DENIED.

## BACKGROUND

On May 7, 2012, Nix protectively filed a DIB application with the Social Security Administration ("SSA"). Tr.[1] 129-30. He alleged that he had been disabled within the meaning of the Act since October 14, 2009 due to cervical and lumbar spine pain, left and right knee pain, and hypertension. Tr. 154-55. After his application was denied at the initial administrative level, a hearing was held before Administrative Law Judge William M. Weir ("the ALJ") on May 6, 2013 in which the ALJ considered Nix's application *de novo*. Tr. 33-63. Nix appeared at

---

[1]      References to "Tr." are to the administrative record in this matter.

the hearing with his attorney and testified. *Id.* Don Schrader, a Vocational Expert ("VE"), also testified by telephone. Tr. 59-62. On January 31, 2014, the ALJ issued a partially favorable decision in which he found Nix disabled as of his 50th birthday, January 5, 2013, but not as of his alleged onset date, October 14, 2009. Tr. 14-24. That decision became the Commissioner's final decision when the Appeals Council denied Nix's request for review on March 23, 2015. Tr. 1-6. Nix commenced this action on April 15, 2015, seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I.  District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). It is not this Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

## II. Disability Determination

Determination of whether a claimant is disabled within the meaning of the Act requires an ALJ to follow a five-step sequential evaluation. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 ("the Listings"). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f). The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual

3

functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ's decision analyzed Nix's claim for benefits under the process described above. At step one, the ALJ found that Nix had not engaged in substantial gainful activity since October 14, 2009, the alleged onset date. Tr. 16. At step two, the ALJ found that Nix has the following severe impairments: lumbar degenerative disc disease and bilateral knee arthritis. Tr. 16. At step three, the ALJ found that such impairments, alone or in combination, did not meet or medically equal an impairment in the Listings. Tr. 17.

Next, the ALJ determined that Nix retained the RFC to perform sedentary work[2] with the ability to sit or stand at will while remaining at a workstation. Tr. 23-29. At step four, the ALJ relied on the VE's testimony and found that this RFC prevents Nix from performing his past relevant work as an automobile detailer, car wash supervisor, or automobile sales person. Tr. 22.

At step five, the ALJ relied on the VE's testimony and found that from his alleged onset date on October 14, 2009, to his 50th birthday on January 5, 2013, Nix was capable of making an adjustment to other work that exists in significant numbers in the national economy given his RFC, age, education, and work experience. Tr. 22-23. Specifically, the VE testified that Nix could have worked as a telephone solicitor or non-emergency dispatcher. *Id.* The ALJ also found, however, that as of January 5, 2013, the date Nix's age category changed, 20 C.F.R. §

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

404.1563, there are no jobs that exist in significant numbers in the national economy that Nix could perform given his RFC, age, education, and work experience. Tr. 23. Accordingly, the ALJ concluded that Nix was not "disabled" under the Act before January 5, 2013, but he found that Nix became disabled on that date and continued to be disabled through his decision on January 31, 2014. Tr. 23.

## II. Nix's Challenges

Nix argues that (1) the ALJ's determination that he could perform sedentary work from his alleged onset date to his 50th birthday is not supported by substantial evidence; and (2) the ALJ's credibility assessment was improper.[3] ECF No. 13-1, at 4-7. These arguments are addressed in turn below.

### A. RFC and Onset Date

Nix argues that the ALJ improperly assessed his RFC and incorrectly determined his disability onset date. ECF No. 13-1, at 4-5. Specifically, Nix contends that the ALJ's determination that he was able to work from October 14, 2009, the alleged disability onset date, to his 50th birthday on January 5, 2013, is not supported by substantial evidence. *Id.* The Commissioner maintains that the ALJ's RFC determination and chosen disability onset date were proper (ECF No. 16-1, at 14-15), and this Court agrees.

#### 1. RFC Assessment

RFC is defined as "what an individual can still do despite his or her limitations." *Desmond v. Astrue*, No. 11-CV-0818 (VEB), 2012 WL 6648625, at *5 (N.D.N.Y. Dec. 20, 2012)

---

[3] Nix also contends that his prior DIB application should be reopened. ECF No. 13-1, at 6-7 (citing 20 C.F.R. § 404.988(a) ("A determination, revised determination, decision, or revised decision may be reopened . . . [w]ithin 12 months of the date of the notice of the initial determination, for any reason.")). Nix's first DIB application was filed on November 29, 2010 and was denied on May 10, 2011. Tr. 64-70. His second application, which is at issue here, was filed on May 7, 2012, within one year of when the first application was denied. The Commissioner argues, however, that "even if the prior application could be reopened . . . all the medical assessments in the record support the ALJ's RFC finding in this case" (ECF No. 16-1, at 16), and this Court agrees.

(quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999)). To determine a claimant's RFC "the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis." *Desmond*, 2012 WL 6648625, at *5 (citing 20 C.F.R. § 404.1545(a)). "An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations." *Id.* (citation omitted).

Nix claims that the ALJ relied too heavily on the January 2013 opinion of his treating orthopedic surgeon Edward Simmons, M.D. ("Dr. Simmons") that "a sedentary job where he can change position as needed would be the best type of work situation." Tr. 491. Nix asserts that the ALJ should not have given "great weight" (Tr. 20) to this opinion because it was rendered after he had back surgery in 2012 and because Dr. Simmons treated his back issues only and thus ignored his knee issues. ECF No. 13-1, at 4-5.

The ALJ must give controlling weight to a treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). An ALJ may discount a treating physician's opinion only if it does not meet this standard, and to do so the ALJ must "comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004).

Here, the ALJ's RFC determination is identical to Dr. Simmons's January 2013 opinion that Nix can perform sedentary work with the ability to change positions. The ALJ gave "great weight" to this opinion based on Dr. Simmons's treatment relationship with Nix, which would make him familiar with his functional abilities, and based on Dr. Simmons's expertise as an

orthopedic surgeon. Tr. 20. The ALJ found that Dr. Simmons's assessment was supported by the objective medical evidence, which showed that Nix could perform sedentary work, and that his opinion was consistent with the other medical opinions in the record. Tr. 20.

Reviewing physician Jack Bankhead, M.D. ("Dr. Bankhead"), for instance, also opined in October 2012 that Nix could engage in a sedentary job where he did not climb ropes, ladders, or scaffolds, that he could occasionally kneel and crawl, and that he should avoid concentrated exposure to cold, vibrations, and hazards. Tr. 21 (citing Tr. 475-76). The ALJ gave this opinion "great weight" because it was consistent with treating physician Dr. Simmons's opinion. Tr. 21. The ALJ did not err by relying on Dr. Bankhead, a medical source whose opinions the ALJ found consistent with the record as a whole. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

Consultative examiner Nikita Dave, M.D. ("Dr. Dave") also examined Nix in March 2011 before his back surgery and second knee surgery. Tr. 244-48. The ALJ also gave Dr. Dave's opinion "great weight" because it was consistent with treating physician Dr. Simmons's opinion. Tr. 21. The ALJ noted that Dr. Dave's physical examination revealed that Nix had a normal gait, could walk on heels and toes without difficulty, and could perform half of a full squat. Tr. 21 (citing Tr. 245). Dr. Dave also reported that Nix could change for the examination and get on and off the examination table without help and that he could rise from a chair without difficulty. Tr. 21 (citing Tr. 245). Dr. Dave's examination also revealed that the range of motion in Nix's lumbar and cervical spine was restricted, but that a straight leg raise test was negative. Tr. 21 (citing Tr. 246). Dr. Dave noted full range of motion in Nix's left knee, but that his right knee flexion was limited. Tr. 21 (citing Tr. 246). Dr. Dave's medical source statement provided

that Nix had "[m]oderate limitations for repetitive bending, twisting through the cervical and lumbar spine, lifting, carry[ing], pushing, and pulling of heavy objects." Tr. 21 (citing Tr. 247). The ALJ's RFC determination is consistent with Dr. Dave's opinion because sedentary work does not require repetitive bending or twisting or heavy lifting. *See* 20 C.F.R. § 404.1567(a).

The ALJ also relied on a report from Kathleen Grace ("Ms. Grace") of the Office for Adult Career and Continuing Education Services ("ACCES-VR")[4] that Nix was capable of sedentary work. Tr. 19 (citing Tr. 171). Ms. Grace opined in June 2011, before Nix's back surgery, that he had the following physical restrictions: "lifting limited to ten pounds or less, some limit to walking and standing, sedentary work needed . . . avoid work environments of standing on concrete." Tr. 171. Although Ms. Grace is not an "acceptable medical source," 20 C.F.R. § 404.1513(a)(1)-(5), the Commissioner is entitled to use evidence from other sources, like educational personnel, to show the severity of a claimant's impairments and how it affects his or her ability to work. 20 C.F.R. § 404.1513(d)(2); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). The amount of weight to give such an opinion is based on several factors, including how consistent that opinion is with the record as a whole. *See* 20 C.F.R. § 404.1527(c)(4). Here, the ALJ appropriately relied on this opinion because it was consistent with the other medical opinions that restricted Nix to sedentary work.

Finally, the ALJ also summarized the records provided by Keith C. Stube, M.D. ("Dr. Stube"), who treated Nix for his knee impairments. Tr. 19. Nix had surgery on his right knee in November 2009. Tr. 19 (citing Tr. 284-85). One month after the surgery, Nix reported

---

[4] Nix underwent vocational assessments through ACESS-VR, which revealed that he had low-level language and math skills. ECF No. 13-1, at 3. Nix implies to this Court that the ALJ should have considered his cognitive deficits even though "the claim was not made that [his] impairment met § 12.05 of the Commissioner's Listings." *Id.* at n.3. However, Nix does not explain how the RFC should have accounted for his cognitive deficits. He merely states that the ALJ "explicitly ignored the very long vocational assessment . . . which pointed out the deficits in [his] reading and language skills and his mental status." *Id.* at 5. This Court has not seen, and Nix has not cited to, medical evidence in the record indicating that he has an intellectual disability as defined in Listing 12.05.

"progressive improvement," although he still had some difficulty with certain motions. Tr. 19 (citing Tr. 287). Dr. Stube cleared Nix to return to work in January 2010. *Id.* Nix did not return to work at that time, however, because he was apprehensive about his job duties, which included twisting, bending, and kneeling on concrete. Tr. 19 (citing Tr. 288). Dr. Stube opined that Nix could tentatively return to work in March 2011. *Id.*

Nix had a second surgery on his right knee in April 2011. Tr. 19. Three months after the surgery, Nix reported that his right knee was doing "significantly better," but that he had left knee pain "because he ha[d] been compensating for his right knee pain." Tr. 19 (citing Tr. 407). One month later, Nix reported that his right knee was "significantly improved," but that he still had pain squatting and kneeling. Tr. 19 (citing Tr. 406). One year after the surgery, Dr. Stube noted that Nix's right knee ligaments were stable with a good range of motion. Tr. 19 (citing Tr. 398). Dr. Stube recommended that Nix continue with ACCES-VR training because he indicated that he was unable to work his former job. Tr. 19 (citing Tr. 397-98).

Although it does not appear that Dr. Stube provided a functional capacity assessment, his reports indicated that Nix did well after his knee surgeries and that he encouraged Nix to return to work. Tr. 287-88, 406-07, 397-98. Dr. Stube also recommended that Nix use a bicycle and elliptical trainer for exercise, which is not inconsistent with the ALJ's finding that Nix can perform sedentary work. *See Corbett v. Comm'r of Soc. Sec.*, No. 7:08-CV-1248, 2009 WL 5216954, at *13 (N.D.N.Y. Dec. 30, 2009) (explaining that the claimant's pain management specialist's recommendation that that he could engage in aerobic activity was consistent with the ALJ's finding that he could perform sedentary work) (citation omitted).

Accordingly, for all the reasons stated, this Court finds that the ALJ's RFC determination that Nix could perform sedentary work with the ability to sit or stand at will while remaining at a workstation is supported by substantial evidence.

### 2. Disability Onset Date

Since this Court found that the ALJ's sedentary RFC determination was proper, this Court also finds that the ALJ properly applied the Medical-Vocational Guidelines ("the Grid"), 20 C.F.R. Part 404, Subpt. P, App'x 2, and thus did not err when he determined that Nix became disabled on January 5, 2013, when he turned 50 years old.

"As a general rule, a claimant's allegation regarding the date of onset must be accepted provided it is consistent with medical evidence in the record." *Corbett*, 2009 WL 5216954, at *13 (citing S.S.R. 83-20, 1983 WL 31249, at *3). "Where the ALJ determines that the date of onset is other than what the claimant alleges, the ALJ has an affirmative obligation to adduce substantial evidence to support his [finding]." *Id.* (internal quotation marks and citation omitted) (alteration in original).

Nix turned 50 years old on January 5, 2013, which changed his age category under the Grid to that of a "person closely approaching advanced age." 20 C.F.R. § 404.1563(d). From October 14, 2009, the alleged disability onset date, to his 50th birthday, Nix was considered a "younger person." 20 C.F.R. § 404.1563(c). An individual under age 50 is classified as a "younger person" because the SSA "generally do[es] not consider that [his or her] age will seriously affect [his or her] ability to adjust to other work." 20 C.F.R. § 404.1563(c); *see also Davis v. Shalala*, 883 F. Supp. 828, 838 (E.D.N.Y. 1995). An individual age 50 to 55, however, is classified as a "person closely approaching advanced age," because the SSA considers that the individual's "age along with a severe impairment(s) and limited work experience may seriously

affect [his or her] ability to adjust to other work." 20 C.F.R. § 404.1563(d); *see also Davis*, 883 F. Supp. at 838-39.

Under Rule 201.21 of the grid, a younger person age 45 to 49 with Nix's RFC, age, education, and past work experience is not disabled. When Nix became an individual "closely approaching advanced age" on January 5, 2013, however, the ALJ properly applied Rule 201.14 of the grid and determined that he was disabled as of that date. *See Corbett*, 2009 WL 5216954, at *13 (finding that when a younger person with the RFC for sedentary work turned 50 years old and became a person closely approaching advanced age, he was properly found disabled).

### B. Credibility Assessment

The ALJ found Nix "less than credible" because (1) the objective medical evidence of record revealed that his back and knee surgeries were generally successful in improving his symptoms and contained medical opinions that he was capable of sedentary work; (2) he applied for and received unemployment benefits while simultaneously alleging an inability to work for SSD purposes; and (3) his physical demeanor during the hearing did not indicate that he was in pain. Tr. 20. Nix argues that the ALJ should not have relied on his application for and receipt of unemployment benefits and on his physical demeanor at the hearing to undermine his credibility. ECF No. 13-1, at 5-6. The Commissioner argues that, regardless of these two reasons, "none of the medical assessments in the record support the severity of [Nix]'s subjective complaints," which the ALJ also pointed out in his credibility assessment. ECF No. 16-1, at 15-16. For the reasons that follow, this Court finds that the ALJ's credibility assessment is supported by substantial evidence.

### 1. Unemployment Benefits

"The ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Jackson v. Astrue*, No. 1:05-CV-01061 (NPM), 2009 WL 3764221, at *7 (N.D.N.Y. Nov. 10, 2009) (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)). "[T]he court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain" if the finding is supported by substantial evidence. *Id.* (internal quotation marks and citation omitted). "It is the function of the Commissioner, not the reviewing court, to 'resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.'" *Id.* (quoting *Caroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

Here, the ALJ considered Nix's application for unemployment benefits and found that it detracted from his credibility. Tr. 20 (citing Tr. 145-51). The ALJ noted that an individual must assert that he or she is ready, willing, and able to work to receive unemployment benefits, which the ALJ viewed as inconsistent with alleging limitations so severe as to be unable to engage in any substantial gainful activity. *Id.* Nix asserts, without citation, that he applied for and received employment benefits in early 2010 and that he "did not even apply for SSD until after he had given up trying to return to work and that he did not apply at the same time that he was collecting employment benefits." ECF No. 13-1, at 5. Based on the record before this Court, however, it appears that Nix received unemployment benefits in the fourth quarter of 2011, and the first and second quarters of 2012. Tr. 148-51. Nix attempts to reconcile his applications for unemployment benefits and DIB by explaining that "[t]he fact that he was ready and willing to work . . . does not mean that he was indeed able to work." ECF No. 13-1, at 5.

"[C]ourts throughout the United States have held that the issue of a plaintiff claiming to be disabled yet drawing unemployment insurance benefits may be considered in determining a plaintiff's credibility." *Jackson*, 2009 WL 3764221, at *8 (citations omitted). Thus, "although plaintiff's filing for and receipt of unemployment benefits while claiming to be disabled is not proof-positive that plaintiff was no longer disabled, the ALJ [may] properly consider[] plaintiff's claim for unemployment benefits when assessing plaintiff's credibility." *Id.* (finding no reversible error in the ALJ's consideration of the plaintiff's application and eligibility for unemployment benefits); *Graham v. Colvin*, No. 13-CV-940S, 2014 WL 5465460, at *6 (W.D.N.Y. Oct. 28, 2014) (finding that the ALJ reasonably determined that the plaintiff's statements were not entirely credible based in part on her application and receipt of unemployment benefits).

Here, the ALJ briefly discussed Nix's receipt of unemployment benefits (Tr. 20), and it is clear that he did not consider this the sole determining factor for finding Nix less credible. The ALJ also considered the objective medical evidence of record, which revealed that Nix's back and knee surgeries were generally successful in improving his symptoms and contained medical opinions that Nix was capable of sedentary work with a sit/stand option. Tr. 20-21 (citing Tr. 244-50, 287, 397, 403-04, 476, 489, 491, 493-94). Accordingly, the ALJ's consideration of Nix's receipt of unemployment benefits did not make the credibility assessment erroneous.

### 2. Physical Demeanor at the Hearing

The SSA's regulations allow "observations by our employees and other persons" to be treated as evidence. 20 C.F.R. § 404.1529(c)(3). "Although the Second Circuit has held that 'there is no *per se* legal error where the ALJ considers physical demeanor as one of several factors in evaluating credibility' 'such observations should be assigned only limited weight.'"

*Branca v. Comm'r of Soc. Sec.*, No. 12-CV-643 (JFB), 2013 WL 5274310, at *14 (E.D.N.Y. Sept. 18, 2013) (quoting *Schaal*, 134 F.3d at 502). This technique is known as the "sit and squirm index" and has been heavily criticized in this Circuit. *See Aubeuf v. Schweiker*, 649 F.2d 107, 113 (2d Cir. 1981) (stating that subjecting claimants to a "sit and squirm index" "raises serious questions" and noting that rendering an expert medical opinion is "beyond [an ALJ's] competence"); *De Jesus v. Sec'y of Health & Human Servs.*, No. 83 CV 1107, 1984 WL 62838, at *2 (E.D.N.Y. May 23, 1984) ("The ALJ appears to have based his decision substantially upon his observation of plaintiff at the hearing. This practice, described as reliance upon a 'sit and squirm' index, has been disapproved in this Circuit and others for quite some time.").

Here, the ALJ stated that he "carefully observed [Nix] at the hearing, and noted that he was not in any obvious pain or discomfort when walking in or out of the hearing room, or while sitting in the course of the hearing. [Nix] lacked the general physical appearance of a person who might have been experiencing prolonged or severe pain." Tr. 20. Although this statement was likely inappropriate, this Court finds that there was no legal error because the ALJ is entitled to consider physical demeanor *as one of several factors* in evaluating credibility. The ALJ did not rely on Nix's physical demeanor at the hearing as the sole reason to find him less credible. Tr. 20. As explained above, the ALJ also considered the objective medical evidence of record, which revealed that Nix's back and knee surgeries were generally successful in improving his symptoms and contained medical opinions that Nix was capable of sedentary work with a sit/stand option (Tr. 20-21 (citing Tr. 244-50, 287, 397, 403-04, 476, 489, 491, 493-94)), and he considered Nix's application for and receipt of unemployment benefits (Tr. 20 (citing Tr. 145-51)).

For the reasons stated, the ALJ's credibility assessment is sufficiently specific to make clear to this Court and to Nix the reasons for the weight given to his subjective complaints of pain and related symptoms. Based on the above observations, the ALJ reasonably determined that Nix's statements were not entirely credible. Accordingly, this Court finds that the ALJ's credibility assessment is free from error and is supported by substantial evidence.

## CONCLUSION

For the reasons stated above, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 16) is GRANTED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 13) is DENIED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: July 5, 2016
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court